UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ALICE McDUFFIE HARRISON, | ) | Civil Action No.: 4:20-cv-01672-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| -vs- | ) | |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application on November 1, 2016, alleging disability beginning on October 28, 2016. (Tr. 15). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on January 3, 2019, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 15). The Administrative Law Judge (ALJ) issued an unfavorable decision on April 9, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-26). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review. On April 19, 2020, Plaintiff filed this action. (ECF No. 1).

**B.      Plaintiff's Background and Medical History**

Plaintiff was born on April 17, 1967 and was forty-nine years old on the alleged onset date. (Tr. 24). Plaintiff had past relevant work as a weaver. (Tr. 24). Plaintiff alleges disability originally due to osteoarthritis in back, hips, and knees, lower back lumbar fusion, arthritis/carpal tunnel in wrists, rheumatoid arthritis, Sjogren's syndrome, high blood pressure, morbid obesity, and left ankle surgery. (Tr. 63-64). Relevant records will be addressed under the pertinent issue headings.

**C.      The ALJ's Decision**

In the decision of April 9, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 15-26):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.

2. The claimant has not engaged in substantial gainful activity since October 28, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: right hip arthritis, degenerative disc disease of the lumbar spine status post lumbar fusion surgery, obesity, carpal tunnel syndrome of the right wrist, and bilateral knee arthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift 20 pounds occasionally and 10 pounds frequently, she can stand, walk, and sit for six hours out of an eight hour workday. She can push and pull with her lower extremities frequently. She can frequently climb ramps and stairs, and can occasionally climb ropes, ladders, scaffolds, balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to hazards. She is limited to frequent handling and fingering with the right upper extremity.

2

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on April 17, 1967 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 28, 2016, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues[1] the ALJ erred in evaluating the opinions of DPT Calvert, the state agency consultants, and NP Gilchrist. Plaintiff argues the ALJ erred in the subjective symptom evaluation. Plaintiff argues the ALJ erred in the RFC determination, specifically by finding Plaintiff could do light work, frequently climb ramps/stairs, occasionally crawl, cane usage/gait, obesity, sustaining workweek, and as to function-by-function. Defendant argues the ALJ applied the correct law and relied on substantial evidence in finding Plaintiff not disabled.

## A.    LEGAL FRAMEWORK

---

[1] For ease of analysis, Plaintiff's issues are reorganized.

3

1.    **The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

---

C.F.R. § 404.1520(h).

5

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations.*" Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

### B.     ANALYSIS

6

**Opinions**

Plaintiff argues the ALJ erred in evaluating the opinions of DPT Calvert, the state agency consultants, and NP Gilchrist.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c).  Generally, more weight is given to the opinions of examining physicians than nonexamining physicians.  More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c).  The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of

7

record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

DPT Calvert

DPT Calvert is a physical therapist who was hired by NP Gilchrist to perform a functional capacity evaluation. Calvert is not a treating source.

The ALJ weighed Calvert's evaluation:

> Similarly, I assign significant weight to the functional capacity examination conducted by Sloan Calvert, DPT, in November 2018 (6F/6). Although not an acceptable medical source, Mr. Calvert is a specialist in assessing functional capacity evaluations. Of particular note on this evaluation is that "significant self-limiting and inconsistent behavior influenced test results" (6F/6). The determination that the claimant is capable of an overall level of work within the light range indicates her minimum ability, rather than the appropriate determination of her maximum ability (6F/6). Mr. Calvert observed that the claimant had reduced range of motion of the lumbar spine, but upper body strength and range of motion within normal limits (6F). Therefore, I assign significant weight to Mr. Calvert's functional capacity evaluation, in particular his opinion that the claimant demonstrated the minimum ability to perform work in the range of light exertional work. In reaching my conclusions I note that Sloan Calvert is not an acceptable medical source or treating source.

(Tr. 23).

The full range of light work generally requires standing or walking, off and on, for a total of approximately six hours in a workday. SSR 83-10. The regulations define light work as "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Plaintiff argues that Calvert's opinion of minimum ability to do light work is inconsistent with Calvert's stand/walk findings. Calvert listed his stand and walk findings separately, as in

8

Plaintiff could walk occasionally and Plaintiff could stand occasionally. (Tr. 383). Occasionally is defined by Calvert as up to 1/3 of the day. Plaintiff could stand 1/3 of the day and Plaintiff could walk 1/3 of the day is what Calvert found, so Plaintiff could stand/walk 2/3 of the work day. Calvert did not opine that Plaintiff could only stand/walk three hours total in a work day. (Tr. 383). Calvert's exam findings are not in conflict with Calvert's opinion that Plaintiff had a <u>minimum</u> ability to do light work.

As to the issue of Calvert's finding of minimum ability, it is noted that an RFC is based on Plaintiff's *maximum* ability to do work activities. SSR 96-8p, 1996 WL 374184, *2. The minimum ability finding is directly related to Plaintiff's arguments regarding Calvert's statements about Plaintiff's self-limiting. Calvert expressly noted the light work finding was based on minimum ability because a maximum could not be determined due to Plaintiff's self-limiting and inconsistent behavior. (Tr. 379). Calvert's finding makes evident that Plaintiff might have had a higher range of work if maximum ability was considered. (Tr. 379). Calvert made further evaluation regarding self-limiting: Plaintiff self-limited on 33% of 12 tasks. Plaintiff stopped the tasks before maximum effort was reached; reasons for self-limiting could be pain, psychosocial, or attempts to manipulate test. "Although difficult to determine the causes of self-limiting behavior, our research indicates that motivated clients self-limit on no more than 20% of test items. If the self-limiting exceeds 20%, then psychosocial and/or motivational factors are affecting test results." (Tr. 379). Later, Calvert noted that Plaintiff demonstrated pain behaviors consistent with observed movement patterns and did not affect test. (Tr. 380). Plaintiff self limited only on the tasks of lifting/carrying, work bent over-sitting, and squatting. (Tr. 383). As to grip strength testing, there was significant evidence of low effort and inconsistent behavior. (Tr. 385).

The ALJ thoroughly considered the 20 C.F.R.§ 404.1527(c) factors here. The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision.  The ALJ appropriately considered Calvert's opinion and provided substantial evidence for the weight given.

State agency consultants

State agency medical consultants "are highly qualified ...who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(e).

Plaintiff argues the ALJ afforded significant weight to consultants' opinions without resolving conflicts. Plaintiff's arguments as to Calvert's objective exam findings and minimum ability of light work have already been addressed above. Plaintiff uses such argument again to argue the state agency RFCs are inconsistent. Again, as discussed above, such findings are not inconsistent as to light exertion.

As to Plaintiff's arguments regarding crawling and climbing, the state agency consultants found occasionally crawl. Calvert and Gilchrist found never crawl. The state agency consultants found frequently climb stairs/ramps, and Calvert and Gilchrist found occasionally climb stairs. (Tr. 67-68, 79-81, 383, 377). This issue is not outcome determinative. All the jobs opined by the VE, per the DOT job requirements, do not involve any climbing or crawling, such that the RFC could have been "never climb or crawl," and the jobs testified to would still meet Step Five requirements. (Tr. 25);  office helper (DOT #239.567-010), 1991 WL 672232, routing clerk (DOT #222.587-038),

1991 WL 672123, and marker (DOT #209.587-034), 1991 WL 671802.

 NP Gilchrist 

NP Gilchrist is a treating provider; however, per applicable regulations and for social security purposes, NP Gilchrist is not an acceptable medical source. In November 2018, NP Gilchrist opined Plaintiff could occasionally lift 12 pounds and frequently less than 10 pounds. (Tr. 638). Plaintiff could stand/walk for a total of two hours. (Tr. 639). NP Gilchrist answered basis of findings was Calvert's exam. (Tr. 639). NP Gilchrist made no opinions on any categories that were not addressed by Calvert. (Tr. 640). Gilchrist opined Plaintiff was capable of high stress work. (Tr. 641). Gilchrist wrote in that medications reduced attention span and created drowsiness. (Tr. 641).

The ALJ found as to NP Gilchrist:

Conversely, I assign limited weight to the medical source statement from Jill Gilchrist, NP-C (6F). Ms. Gilchrist is not considered an acceptable medical source, and her opinion is based primarily on the functional capacity evaluation, yet is inconsistent with its findings (6F). Ms. Gilchrist provides no clinical support for her opinions regarding the claimant's ability to lift or carry 12 pounds occasionally and 10 pounds frequently, stand for 2 hours of an 8-hour workday, or why the claimant would require a change of position every 20 minutes, a provision which is not specified in the functional capacity evaluation (6F/2-3). Similarly, Ms. Gilchrist provides no objective findings in support of her opinion regarding the claimant's ability to perform postural or manipulative tasks (6F/4). Ms. Gilchrist does provide objective findings in support of her opinion that the claimant is capable of high stress work, noting that the claimant responds well to changes and demonstrates enthusiasm regarding health and wellness treatment at the pain clinic (6F/5). She also opines that the claimant would demonstrate a reduced attention span and drowsiness as a result of her narcotic pain treatment (6F/5), yet the record does not reflect any objective findings of decreased attention or concentration. To the contrary treatment records repeatedly note no side effects from medications or excessive sedation (Exhibit 9F). Therefore, Ms. Gilchrist's inconsistent application of functional capacity evaluation report and limited objective support warrants only limited weight to her opinion as a non-acceptable medical source. Examinations revealing normal gait, no joint swelling, no tenderness or muscle weakness, musculoskeletal normal range of motion upper and lower extremities, extremities without pain, 5/5 strength and normal range of the cervical spine failed to reveal findings to support the extreme limitations

assessed by Ms. Gilchrist (Exhibits 9F, 4F and 1F).

(Tr. 23-24). Plaintiff asserts that the ALJ could not have found the Gilchrist's statement inconsistent with Calvert's exam because Calvert's exam "was ordered specifically for the purpose of completing" Gilchrist's statement. (ECF No. 20 at 26). However, Gilchrist's summary and interpretation of Calvert's exam and findings does not align with the actual findings as discussed by the ALJ, regardless of the exam being ordered for Gilchrist. (Tr. 23-24). Plaintiff asserts Gilchrist's opinion is supported by her own evaluations, without citation to specific exam findings or any transcript page of the record. (ECF No. 20 at 27).

Gilchrist treatment notes in the record show the following: On January 16, 2017, Plaintiff was seen by NP Gilchrist for back/leg pain. Plaintiff reported she had been unable to return to full time work due to back/leg pain. Plaintiff had short term relief with oxycodone/acetaminophen. Plaintiff reported she took the narcotic very sparingly and still had nearly all of the tablets from an October 2016 prescription. (Tr. 390). Upon exam, Plaintiff was in slight distress. Plaintiff had hyperalgesia[4] of lumbar spine, tenderness, absent patellar reflexes, mildly positive straight leg raise, and mildly antalgic gait. (Tr. 391). Plaintiff performed exercises provided to her by physical therapy. (Tr. 391). Assessment was low back pain with radiculopathy and failed back surgery syndrome. (Tr. 391). Plaintiff did not need pain medication renewed. (Tr. 391).

On February 3, 2017, Plaintiff was seen by NP Gilchrist. Plaintiff reported significant pain. Plaintiff was interested in injections. Plaintiff was open to spinal cord stimulator. (Tr. 394). Plaintiff

---

[4] "Hyperalgesia is an abnormally heightened sensitivity to pain that can result from either injury to a body part or from the use of opioid pain killers." *Brewer v. Berryhill*, No. 2019 WL 1914813, at *9 (W.D. Va. Mar. 22, 2019), *report and recommendation adopted*, 2019 WL 1903420 (W.D. Va. Apr. 29, 2019)(internal citation omitted).

was instructed to do a better job exercising every day. (Tr. 394). "Overall, her activity level has increased, but her pain has increased as well." (Tr. 395). Upon exam, Plaintiff was in slight distress. (Tr. 395). Plaintiff had positive straight leg raises seated. There is no gait noted. (Tr. 395). Plan selective nerve root block at L5-S1. (Tr. 395).

On February 23, 2017, Plaintiff was seen by NP Gilchrist's supervising doctor Latourette, M.D. (Tr. 400). Plaintiff appeared to be describing left L3 nerve root irritation. Plaintiff had L4 injections in the past without significant improvement. An L3 injection was performed. Percocet prescription was taken over by their clinic that Plaintiff took during the day "so that she can take care of herself and her house." (Tr. 400).

On March 21, 2017, Plaintiff was seen by NP Gilchrist. Plaintiff reported 100% pain relief after the injection. "All of her activities of daily living are now performed with greater ease." Plaintiff still had back pain but was delighted with what was achieved with her leg pain. Plaintiff reported additional relief with Percocet. Plaintiff reported her activity level increased some. (Tr. 403). Upon exam, Plaintiff was in slight distress. Plaintiff had positive seated leg raise, a little difficulty rising from sit to stand, and progressing gait. (Tr. 404).

On May 23, 2017, Plaintiff was seen by NP Gilchrist. (Tr. 417). Plaintiff reported pain level of 7. Plaintiff reported the injection reduced 100% of leg pain and that level of relief continued and now all of her activities of daily living are now performed with greater ease. (Tr. 417). Plaintiff reported one Percocet a day provided her with short term pain relief. Plaintiff did a modified daily home exercise program. (Tr. 417). Upon exam, Plaintiff was in slight distress. Plaintiff had hyperalgesia and positive seated straight leg raise. No gait abnormality is noted. Problems were listed as unstable. (Tr. 418).

13

On July 27, 2017, Plaintiff was seen by NP Gilchrist. (Tr. 421). Plaintiff reported no leg pain but still back pain. Plaintiff reported short term pain relief with Percocet. Plaintiff only used extra on one day. (Tr. 421). Conservative care measures "do benefit her tremendously." (Tr. 421). Plaintiff reported she fell a month prior, but under review of systems was "denies any recent falls." (Tr. 421-422). Plaintiff had no interest in physical therapy again and thought her exercise was enough. (Tr. 422). Upon exam, Plaintiff was in slight distress and had hyperalgesia. Plaintiff had a pain level of 6. No abnormal gait was noted. (Tr. 422).

On January 11, 2018, Plaintiff was seen by NP Gilchrist. (Tr. 573). Plaintiff reported moderate back/leg pain. Plaintiff reported home exercise helped with her comfort. Plaintiff reported OTC medications and compresses help her pain. Plaintiff reported improved comfort using Norco and Lyrica. (Tr. 573). Plaintiff denies any recent falls, but also it is noted Plaintiff reported some instability and falling over the holidays. Upon exam, Plaintiff was sitting upright and in mild distress . (Tr. 574). Flexion and extension of lumbar exacerbated pain. Plaintiff had negative straight leg raise and significant hyperalgesia, especially along the right anterior thigh ending at the knee. Plaintiff returned an out of date prescription because she so sparingly used medication. (Tr. 574). Percocet and Lyrica were refilled.

On April 6, 2018, Plaintiff was seen by NP Gilchrist. (Tr. 575). Plaintiff achieved relief from once daily Percocet. Plaintiff had been out for several days. Plaintiff achieved restful sleep using Lyrica. Injections were discussed as they were helpful in the past; Plaintiff had not had a return of leg pain and the injection continued to provide some level of relief. (Tr. 575). Under review of systems, Plaintiff was positive for back pain, gait problem, and myalgias. (Tr. 575). Upon exam, gait was abnormal. (Tr. 577). Plaintiff had normal standing test and normal forward bending. Plaintiff

had lumbar tenderness, mildly limited painful extension/flexion and mildly limited, painful rotation and lateral bend. (Tr. 578). Assessment was other spondylosis with myelopathy, lumbar region and post laminectomy syndrome. (Tr. 578). Prescriptions were refilled. (Tr. 579).

On June 28, 2018, Plaintiff was seen by NP Gilchrist. (Tr. 596). Similar history was noted with Plaintiff's pain reports and benefits of relief. (Tr. 596). Under review of systems, Plaintiff was positive for back pain, gait problem, and myalgias. (Tr. 596). Upon exam, gait was abnormal. Plaintiff had lumbar tenderness, mildly limited painful extension/flexion, and mildly limited, painful rotation and lateral bend. Plaintiff had normal forward bending and normal straight leg raise test. (Tr. 599). Prescriptions were refilled. (Tr. 599).

On October 18, 2018, Plaintiff was seen by NP Gilchrist. (Tr. 618). History was similar as past. (Tr. 618). Now, contrary to prior reports, Plaintiff reported injections had not been helpful in the past. Plaintiff reported she was not interested in back surgery or spinal cord stimulator. "She is asking to have forms filled out today. I have informed her that we will need a functional capacity exam as the measurements are quite specific on the form." (Tr. 618).  Under review of systems, Plaintiff was positive for back pain, gait problem, and myalgias. (Tr. 618). Upon exam, gait was abnormal. (Tr. 620). Plaintiff had lumbar tenderness and mildly limited painful range of motion. (Tr. 621). Lyrica and Percocet were refilled. (Tr. 622).

On November 29, 2018, Plaintiff was seen by NP Gilchrist. (Tr. 633). Pain complaints and relief notations were similar as prior notes. (Tr. 633). "She underwent a functional capacity exam to further evaluate her ability to return to work. This has been completed and I have indicated to her that I will complete her paperwork today." (Tr. 633). Under review of systems, Plaintiff was positive for back pain, gait problem, and myalgias.  (Tr. 633). Upon exam, gait was abnormal. Plaintiff had

lumbar tenderness and mildly limited painful range of motion. (Tr. 636). An Evzio injector was prescribed in the event of an accidental overdose. (Tr. 637). The opinion as discussed above was attached. (Tr. 638-641).

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Even with some evidence of abnormal findings, the ALJ provided more than a mere scintilla of record support for the weight given to NP Gilchrist's opinions. The ALJ complied with the applicable regulations in making clear to a subsequent reviewer the reasons for the findings made. The ALJs decision was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in the subjective symptom evaluation.

SSR 16-3p is applicable to cases decided after its effective date, such as this case. *See Morton v. Berryhill*, No. 8:16-cv-0232-MBS, 2017 WL 1044847, *3 (D.S.C. Mar. 20, 2017). Although SSR16-3p eliminates usage of the term "credibility" because the regulations do not use the term, the assessment and evaluation of Plaintiff's symptoms requires usage of most of the same factors considered under SSR 96-7p.

Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record,

16

including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce his capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c).  The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record."  SSR 16-3p, at *11.

The ALJ considered Plaintiff's allegations:

The claimant has alleged disability based on osteoarthritis in the back, bilateral hips and bilateral knees, LS lumbar fusion, bilateral arthritis and carpal tunnel, rheumatoid arthritis, Sjogren's syndrome, high blood pressure, morbid obesity, and left ankle surgery (3E/2). She reports symptoms of back, knee, and hip pain, stiffness, shortness of breath, tingling and numbness in two fingers on her right hand (Hearing Testimony; 4E). She also reports medication side effects of drowsiness, frequent urination, headache, and diarrhea, and feeling "spaced out" ( 4E; 7E). The claimant has alleged that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands (Hearing Testimony; 4E). Specifically, she reports difficulty transitioning from sitting to standing, problems bending at the waist, pain with twisting at the waist, and instability when walking (Hearing Testimony; 4E). She estimates that she is able to walk approximately 50 to 100 feet before resting, stand for about 20 minutes before resting, and can lift 10 pounds with one hand (Hearing Testimony; 4E).

(Tr. 20-21).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of alleged symptoms were not entirely consistent with the record evidence. The ALJ then turned to the evidence of record, noting records regarding Plaintiff's hips. (Tr. 21). The ALJ noted imaging of mild to moderate arthritis, that an injection relieved most of her pain for at least two months, and Plaintiff did not complain of an increase or need for injection until about nine months later. (Tr. 21). The ALJ cites to specific page numbers of Exhibit 8F. (Tr. 21). The ALJ reviewed exams as to hips with good range of motion and occasional tenderness. "The [RFC]'s limitation to light work with additional postural limitations provides sufficient accommodation for the claimant's

18

hip arthritis." (Tr. 21). The ALJ then reviewed records as to Plaintiff's lower back pain. Plaintiff had surgery in 2016. The ALJ reviewed normal exams after surgery, citing specific exhibit page numbers. (Tr. 21). The ALJ considered Plaintiff's report that surgery improved pain until returning to work and an increase in pain due to caring for her grandchild. (Tr. 21). A January MRI showed foraminal stenosis. Plaintiff began selective nerve root block injections, which the ALJ noted Plaintiff had 100% pain relief as to leg pain but was still experiencing back pain. The ALJ noted when Plaintiff reported a pain level of 7, providers usually only noted stiffness rather than more severe symptoms. Plaintiff testified of her abilities on a typical day and week. (Tr. 21). "The medical evidence also demonstrates physical examination findings of only mildly limited range of motion with flexion, extension, lateral bend and rotation (10F). Therefore, I find that the evidence in the record supports the limitation in the residual functional capacity to light work with some additional limitations stooping and crouching." (Tr. 21-22).  Then, the ALJ reviewed Plaintiff's wrist complaints and treatment, citing exhibits 9F/93, 9F/96, 4E/2 and later concluding: "The handling and fingering limitation in the residual functional capacity accounts for the claimant's carpal tunnel syndrome in her right hand." (Tr. 22). The ALJ reviewed records regarding Plaintiff's knee, noting Plaintiff's reports, exams, and conservative treatment, as well as the cane issue discussed below, citing specific exhibits and page numbers. (Tr. 22). The ALJ concluded:"The residual functional capacity's limitations regarding pushing and pulling with the lower extremities and additional postural limitations account for the claimant's knee arthritis and resulting pain." (Tr. 22).  The ALJ discussed additional parts of Plaintiff's testimony:

> The claimant testified that medications cause side effects like drowsiness and sleepiness. Contrary to her testimony treatment records from family health care repeatedly note no side effects from medication and that she denied any excess sedation from medications (Exhibit 9F). Further, I note that the claimant testified that

she did not stop working because of her impairments but because she was laid off.[5] Finally, the claimant testified that she needs to use a cane because of balance. This is inconsistent with her prior statement that she did not need assistive device such as a walker, cane or motorized scooter (Exhibit 4E). Examinations repeatedly noted that the claimant had no gait problems which is inconsistent with her testimony that a cane was needed (Exhibits 9F and 4F).

(Tr. 22). The ALJ then weighed opinion evidence. (Tr. 23-24). The ALJ concluded and found:

In sum, I find that the claimant is limited to light work, with additional postural limitations due to her degenerative disc disease of the lumbar spine, arthritis of the hips and bilateral knees, and obesity. Manipulative limitations are based on the claimant's pain and numbness in her hands, resulting from carpal tunnel syndrome. Finally, additional hazard restrictions are appropriate due to pain and the side effects of medication. Accordingly, I find that the claimant retains the residual functional capacity for a range of light work, which is consistent with objective findings on examination, the claimant's treatment history, and opinions, as set forth above.

(Tr. 24).

A claimant's allegations alone can never establish that she is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without pain to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. The ALJ sufficiently explained how Plaintiff's subjective allegations were not entirely consistent with the evidence. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not entirely consistent with the

---

[5] This is but one of several reasons the ALJ relied on to support the subjective symptom evaluation. Plaintiff argues she was not laid off. (ECF No. 20 at 29). Plaintiff worked for three months after her surgery. (Tr. 40). Plaintiff testified HR had a discussion with her and said taking oxycodone was against the rules. Plaintiff answered "yes" to the question, "is that another reason they put you out of work." (Tr. 44). The ALJ cited to substantial evidence to support the ALJ's subjective symptom evaluation.

record.

**RFC: cane/gait, light, climb, crawl, obesity, sustain, and function by function**

Plaintiff argues the ALJ erred in the RFC determination, specifically by finding Plaintiff could do light work, frequently climb ramps/stairs, occasionally crawl, cane usage/gait, obesity, sustaining workweek, and as to function-by-function.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Cane/Gait

Plaintiff argues the ALJ overlooked evidence regarding Plaintiff's cane use. (ECF No. 20 at 24). The ALJ considered Plaintiff's testimony that she was prescribed a cane for balance, but noted that the record did not show a prescription for any such assistive device and the record demonstrated

intermittent findings of unassisted normal gait. (Tr. 22). Later, the ALJ again noted Plaintiff's

testimony regarding a cane for balance and Plaintiff's report at Exhibit 4E that she did not need an

assistive device. (Tr. 22). The ALJ then cited Exhibit 9F and 4F of examinations showing no gait

problems. (Tr. 22). In discussing Gilchrist's opinion, the ALJ again noted examinations of normal

findings inconsistent with the extreme limitations opined by Gilchrist, citing Exhibits 9F, 4F, and

1F. (Tr. 24). Exhibit 4E shows Plaintiff's November 2016 report that she did not need an assistive

device. (Tr. 198). Exhibit 9F are 98 pages of visit notes. (Tr. 475). Plaintiff saw Dr. Holmes on

several occasions. Plaintiff was negative for gait problems. (Tr. 475, 498, 503, 516, 521, 556, 567).

Other exams did not note gait abnormalities. (Tr. 478, 500, 505, 509, 513, 518, 523, 528, 534, 539,

543, 551, 558, 564, 569). Exhibit 4F is twenty pages of treatment notes from McCormick Family

Practice. (Tr. 350). Exams showed abnormal appearance(obese) and did not note gait abnormalities.

(Tr. 352, 356). In January 2017, Plaintiff reported to Dr. Johnson-Bailey that standing/walking did

not bother her more unless it was for a long time. (Tr. 358). In January and February 2017, gait was

normal. (Tr. 359, 363). NP Gilchrist saw Plaintiff in February 2017 and did not note any gait

abnormality. (Tr. 366). Exhibit 1F, cited by the ALJ, is eighteen pages of notes from Articularis

Healthcare. (Tr. 240). Plaintiff had normal gait. (Tr. 242, 247).

The record includes a few abnormal gaits: "mildly antalgic" (Tr. 391). Plaintiff cites to

Calvert at 383 as an abnormal gait; however, no gait finding is on that page. (Tr. 383). Plaintiff cites

to 387, which is Calvert's testing where Plaintiff went beyond maximum ability of task of climbing

stairs with the severe deviation of antalgic gait, where Plaintiff took one stair step at a time rather

than one foot over the other, pushing her thighs up with hands and pulling self with arms. (Tr. 386-

387). Plaintiff cites to a "mildly antalgic gait" by NP Gilchrist on January 16, 2017. (Tr. 391).

Plaintiff cites 393 as a gait problem but such page is a blank medication record. (Tr. 393). Plaintiff

cites to 406; page 406 is a radiology abstract summary form and does not list any gait issue. (Tr. 406). Plaintiff cites to 578, which is a NP Gilchrist exam in April 2018 of abnormal gait. (Tr. 578). Plaintiff argues page 378 shows "cane dependency;" this is Calvert's testing where Plaintiff completed 100% of walking task and a moderate deviation of antalgic gait was noted at 388. (Tr. 387-388); (ECF No. 20 at 24).

While the record may include a few antalgic gait notations, the ALJ supported his findings as to gait and cane need with citation to substantial evidence. The ALJ's RFC findings as to this issue was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

Light work

Plaintiff's arguments regarding ability to perform light work are addressed above when evaluating the weight assigned by the ALJ to DPT Calvert's opinion.

Sustain

Plaintiff argues the ALJ did not analyze whether Plaintiff could sustain light work on a full time basis. (ECF No. 20 at 24). Plaintiff's basis for this argument is Calvert's statement that based on his evaluation, it was difficult to predict whether Plaintiff is capable of sustaining the light level of work for a 40 hour week. (Tr. 379). This statement is made along with Calvert's discussion of Plaintiff's self limiting likely based on psychosocial or motivational factors and inability to determine a maximum performance and only a minimum performance because of Plaintiff's inconsistent behavior. (Tr. 379). Calvert did not opine that Plaintiff was incapable of performing a 40 hour week. The ALJ considered Calvert's statements as to minimum ability and self-limiting and inconsistent behaviors. The ALJ considered the record overall in finding Plaintiff could perform the RFC found. (Tr. 20-24). Substantial evidence supports the ALJ's RFC.

Climb/Crawl

Plaintiff's arguments regarding RFC specific limitations as to climbing and crawling are addressed above in regard to the opinions.

Obesity

The ALJ found Plaintiff's obesity as a severe impairment in earlier steps and thoroughly addressed Plaintiff's obesity in formulating the RFC:

> The claimant is also obese. The record shows that she is 5 '2" tall, weighs between approximately 250 and 260 pounds, and has a Body Mass Index greater than 40 (3E/2; 3F; 4F; 9F). In addition, spirometry results demonstrate that the claimant has pulmonary restriction due to weight (9F/90). I have evaluated the claimant's obesity in accordance with SSR 02-1p; the evidence indicates that the claimant's excess weight exacerbates her back, knee, and hip pain, and may limit her ability to perform some postural activities or work at greater than the light exertional level. In assessing the residual functional capacity I considered the claimant's impairments individually and in combination....I do not find any synergies are created when considering the combined effects of the claimant's impairments with obesity.

(Tr. 22). Substantial evidence supports the ALJ's findings as to this impairment.

Function by function

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, *1. As to the RFC, the ALJ here provided a thorough narrative for the court to meaningfully review. *See e.g. Ladda v. Berryhill*, 749 Fed. Appx. 166, 173 (4th Cir. Oct. 18, 2018)(assessing capacity of functions related to physical limitations was sufficient) and *Wilbanks v. Berryhill*, No. CV 1:17-1069-JMC-SVH, 2018 WL 4941121, at *10 (D.S.C. Feb. 7, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4476118 (D.S.C. Sept. 19, 2018). The ALJ considered Plaintiff's subjective complaints, the medical evidence, Plaintiff's treatment, and opinions. (Tr. 20-24). The

ALJ supported the RFC determination with substantial evidence. (Tr. 20-24).

RFC Conclusion

As demonstrated above, the ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

## III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

s/ Thomas E. Rogers, III

May 20, 2021                                    Thomas E. Rogers, III
Florence, South Carolina                       United States Magistrate Judge